IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| APPJIGGER GMBH,<br>    Plaintiff,<br><br>v.<br><br>BLU PRODUCTS, INC., CT MIAMI LLC,<br>and SAMUEL OHEV-ZION,<br>    Defendants. | Case No. 14 C 9650<br><br>Judge Joan B. Gottschall |

## MEMORANDUM OPINION AND ORDER

Plaintiff Appjigger GmbH develops, advertises, distributes, and licenses software applications ("apps") for use on smart phones and other mobile devices. In this copyright and unfair competition action based on federal and Illinois law, Appjigger asserts that defendants BLU Products, Inc. (a designer of mobile devices), CT Miami LLC (a manufacturer and distributor of cellular telephones), and Samuel Ohev-Zion (the President and CEO of both companies) are liable for displaying unauthorized screenshots and making unauthorized sales of Appjigger's WP Clock app.

The defendants have moved to dismiss for lack of personal jurisdiction and improper venue pursuant to Fed. R. Civ. P. 12(b)(2) and (3), respectively. Alternatively, the defendants ask the court to transfer this action to the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. § 1404(a). For the following reasons, the motion to dismiss for lack of personal jurisdiction is granted so the court need not reach the remaining relief requested by the defendants. Appjigger may file a motion to transfer pursuant to 28 U.S.C. § 1406(a) within one week of the date of this order.

## I. BACKGROUND[1]

Plaintiff Appjigger GmbH is a German limited liability company with its principal place of business in Germany. Appjigger develops, advertisers, markets, distributes, and licenses apps – including the WP Clock app – for smart phones and other mobile devices. Appjigger offers both free and paid versions of the WP Clock app, which it describes on its website as "typographic live wallpaper" that displays customizable information, including the date, time, battery status, and weather.

Defendants BLU Products is a Florida corporation with its principal place of business in Miami, Florida. Defendant CT Miami is an LLC that is owned and operated by the same individuals who are associated with BLU Products.[2] Defendant Samuel Ohev-Zion resides near Miami, Florida. He is the President and CEO of BLU Products and CT Miami, and "directs and has directed substantially all of the activities of BLU Products and CT Miami" that form the basis of Appjigger's complaint. (Compl. ¶ 7, Dkt. 1.)

---

[1] The following facts are drawn from Appjigger's complaint and are accepted as true for the purpose of the defendants' motion to dismiss. *See, e.g., Hill v. Capital One Bank (USA), N.A.*, No. 14 C 6236, 2015 WL 468878, at *1 n.1 (N.D. Ill. Feb. 3, 2015) (motion to dismiss for lack of personal jurisdiction); *Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 806 (7th Cir. 2011) (motion to dismiss for improper venue). The court has also considered the declarations submitted by the parties in connection with the motion to dismiss. *See Felland v. Clifton*, 682 F.3d 665, 672 (7th Cir. 2012) (motion to dismiss for lack of personal jurisdiction); *Faulkenberg*, 637 F.3d at 806 (motion to dismiss for improper venue).

[2] Appjigger alleges that CT Miami is a "Florida LLC." An LLC's citizenship is based on the citizenship of all of the LLC's members so for the purposes of diversity jurisdiction, there is no such thing as a "Florida LLC." *BouMatic, LLC v. Idento Operations, BV*, 759 F.3d 790, 791 (7th Cir. 2014). This is not, however, a diversity jurisdiction case so Appjigger was not required to allege the citizenship of each member of CT Miami. *See id.* Although the members of CT Miami are unknown, the court will proceed based on the parties' implicit agreement that CT Miami is closely connected to Florida.

In March 2012, a CT Miami employee emailed Appjigger to inquire about preloading the "light" version of the WP Clock app onto approximately 50,000 CT Miami phones.[3] Appjigger provided licensing costs via email but because it did not hear back from CT Miami, it assumed that CT Miami was not interested in licensing the app.

In May 2013, Appjigger became aware of a YouTube video depicting a person opening a new mobile device from BLU Products that showed that the device was shipped with Appjigger's WP Clock application pre-installed. This caused an Appjigger employee to investigate by purchasing a BLU Products phone. The paid version of the WP Clock app was pre-installed on that phone. The app included a link to one of Appjigger's websites and the name of Appjigger's software developer. Appjigger concluded, based on a review of BLU Products' website, that BLU Products had pre-installed the WP Clock app on at least 6 models of BLU Products phones and had been doing so since September 2012, potentially resulting in over ten million unauthorized uses of the app. In addition, according to Appjigger, BLU Products has advertised its phones by displaying, without authority to do so, pictures of phones with screens that are indistinguishable from pictures of phones that have Appjigger's WP Clock app installed.

Thomas Anyz (Appjigger's President) wrote to Ohev-Zion (BLU Products' President). Anyz described Appjigger's findings and asked Ohev-Zion to contact him to discuss the use of the WP Clock app. Ohev-Zion did not respond. Anyz sent a reminder email about the letter. After he did not receive a response, Appjigger sent a cease-and-desist letter to BLU Products, which also did not respond.

---

[3] The parties do not specify what the "light" version of the WP Clock app is. It appears to be the free version of the WP Clock app, which has fewer features than the paid version.

In support of their motion to dismiss, the defendants submitted two affidavits from Ohev-Zion. Ohev-Zion asserts that sales to Illinois residents are "an insignificant portion" of the revenues of BLU Products and CT Miami. (1st Ohev-Zion Aff. ¶¶ 12-13, Dkt. 18-1.) Ohev-Zion also generally asserts that it would be burdensome to defend this action in Illinois and that all of the witnesses are located in Florida or Germany. Finally, he denies that BLU Products or CT Miami caused BLU Products phones to be sold at brick and mortar stores in Illinois or online. According to Ohev-Zion, "the only way a BLU Products phone could end up in Illinois is through a third-party distributor over which neither BLU Products nor CT [Miami] have any control." (2d Ohev-Zion Aff. ¶ 16, Dkt. 35-1.)

In opposition to the motion to dismiss, Edward Chalfie (Appjigger's counsel in Chicago) submitted two declarations. As of the date of Chalfie's first and supplemental declarations (March 16, 2015, and May 15, 2015, respectively), the homepages for BLU Products and CT Miami contained pictures of BLU Products phones displaying the WP Clock app. In Chalfie's first declaration, he states that BLU Products' website states that BLU Products has sold "[o]ver 25 million BLU devices . . . in over 40 countries" and that the website also inconsistently represents that BLU Products has sold "10 million BLU devices." (1st Chalfie Decl., Ex. G, Dkt. 28-2 at Page ID# 141.)

Micro Center is a retailer that sells computers and electronics online and in brick-and-mortar stores located in sixteen states. *See* http://www.microcenter.com/site/stores/default.aspx. Chalfie represents that in October 2014, he viewed twelve BLU Products phones at the Micro Center store in Chicago, Illinois, and that in February 2015, he viewed six BLU Products phones at the Micro Center store in Westmont, Illinois. In addition, Chalfie's declaration attaches a

screenshot of BLU Products' website (www.bluproducts.com) showing that as of March 2015, BLU Products represented that its Studio G and Studio X phones were available "exclusively at Best Buy." (1st Chalfie Dec., Ex. D, Dkt. 28-2.) Chalfie's declaration also attaches a screenshot of BLU Products' on-line Amazon.com store. As of May 15, 2015, if a visitor to CT Miami's site clicks on a shopping link, she is taken to BLU Products' website, which has a "BLU SHOP" button with a picture of a shopping cart. If a visitor clicks on that button directly from the BLU Products site or after she is transferred from CT Miami's site to the BLU Products site, the user is directed to BLU Products' Amazon.com store.

In its four-count complaint, Appjigger asserts violations of federal copyright law (Count I) and unfair competition under the Lanham Act (Count III). It also asserts a state law claim of unjust enrichment arising under Illinois law (Count II) and alleges that the defendants violated the Illinois Uniform Deceptive Trade Practices Act (Count IV).

## II. Discussion

The defendants have moved to dismiss for lack of personal jurisdiction and improper venue. Alternatively, they ask the court to transfer this action to the United States District Court for the Southern District of Florida. The defendants assert that they are not responsible for any products sold in Illinois because they sell phones to a master distributor, which then sells phones to retailers, including Micro Center, Best Buy, and Amazon.com.[4] They contend that the master distributor acts independently when deciding where to place products so they do not control

---

[4] Ohev-Zion argues that Appjigger improperly discussed all three defendants (Ohev-Zion and two entities) together in Appjigger's response to the motion to dismiss. Appjigger contends that Ohev-Zion is responsible for the actions of BLU Products and CT Miami so the basis for personal jurisdiction over all of the defendants is identical. The court will not discuss this issue further because it does not affect the outcome of the motion to dismiss.

whether their phones end up at brick and mortar stores in Illinois. In response (and with no citation to any legal authority whatsoever), Appjigger analogizes to Captain Renault in *Casablanca*, who professed to be surprised to discover gambling at Rick's Café, and asserts that it is disingenuous for the defendants to claim that they were unaware that their products were being sold in Micro Center and Best Buy stores in Illinois. Despite this argument, the complaint is dismissed without prejudice to refiling in the Southern District of Florida as the court cannot exercise specific personal jurisdiction over the defendants in this district. However, the clerk is directed to leave this case open to allow Appjigger to file a motion to transfer pursuant to 28 U.S.C. §1406(a) within one week of the date of this order if it elects to do so.

**A.     The Defendants' Motion to Dismiss for Lack of Personal Jurisdiction**

    **1.     Legal Standard**

When a defendant moves for dismissal under Rule 12(b)(2), the plaintiff bears the burden of establishing personal jurisdiction. *Citadel Grp., Ltd. v. Wash. Reg'l Med. Ctr.*, 536 F.3d 757, 761 (7th Cir. 2008). If no evidentiary hearing is held and the motion is decided on written materials submitted by the parties, as is the case here, the plaintiff must make only a prima facie case of personal jurisdiction. *Kipp v. Ski Enter. Corp. of Wisconsin, Inc.*, 783 F.3d 695, 697 (7th Cir. 2015) (citing *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003)). When evaluating whether the plaintiff has carried its burden, the court must resolve any factual disputes in the plaintiff's favor. *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014).

The parties' summaries of the standard of review for motions to dismiss based on the lack of personal jurisdiction cite to authority governing personal jurisdiction when a court's subject

matter jurisdiction rests on diversity. Here, however, Appjigger has asserted federal copyright and Lanham Act claims as well as state law claims. Thus, the "court's jurisdiction rest[s] on a federal question, 28 U.S.C. § 1331, and supplemental jurisdiction, 28 U.S.C. § 1367." *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 801 (7th Cir. 2014). Neither the Copyright Act nor the Lanham Act have "a special federal rule for personal jurisdiction" so the court must "look to the law of the forum for the governing rule." *Id.* (citing Fed. R. Civ. P. 4(k)(1)(A) and *Daimler AG v. Bauman*, 134 S.Ct. 746, 753 (2014)) (Lanham Act); *Philpot v. 420 Magazine, Inc.*, No. 1:14-CV-01790-RLY, 2015 WL 2130961, at *3 (S.D. Ind. May 6, 2015) (Copyright Act).

This brings the court back to the parties' arguments about Illinois law and the United States Constitution, as the court must look to Illinois' long-arm statute, which stretches as far as the Due Process Clauses of the Illinois and federal Constitutions permit. *See* 735 Ill. Comp. Stat. 5/2–209(c) ("A court may also exercise jurisdiction on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States."); *Mobile Anesthesiologists Chicago, LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.*, 623 F.3d 440, 443 (7th Cir. 2010) (holding that "there is no operative difference between those two constitutional limits"); *Kipp v. Ski Enterprise Corp. of Wisconsin, Inc.*, 783 F.3d 695, 697 (7th Cir. 2015) (assuming that Illinois and federal standards for the exercise of personal jurisdiction are coextensive).

The federal Due Process Clause authorizes personal jurisdiction over out-of-state defendants who have "certain minimum contacts with [the state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). A

defendant's contacts with the forum state must be such that it could "reasonably anticipate being haled into court there." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 (1980)).

Specific personal jurisdiction, which is at issue in this case, is appropriate when the suit at issue arises out of the defendant's contacts with the forum. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 & n.8 (1984). The Seventh Circuit has identified "three essential requirements" for specific jurisdiction: "(1) the defendant must have purposefully availed himself of the privilege of conducting business in the forum state or purposefully directed his activities at the state; (2) the alleged injury must have arisen from the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with traditional notions of fair play and substantial justice." *Felland*, 682 F.3d at 673 (internal citations omitted). The analysis is not "mechanical or quantitative." *Int'l Shoe*, 326 U.S. at 319. The ultimate question is "whether it is fundamentally fair to require the defendant to submit to the jurisdiction of the court *with respect to this litigation*." *Purdue Research Found. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 780 (7th Cir. 2003) (emphasis in original).

### 2. Brick-and-Mortar Stores: Micro Center and Best Buy

The stream of commerce theory of personal jurisdiction "refers to the movement of goods from manufacturers through distributors to consumers." *J. McIntyre Machinery, Ltd. v. Nicastro*, — U.S. —, 131 S.Ct. 2780, 2788 (2011). Merely putting goods into the stream of commerce via a distributor is insufficient, without more, to show that a defendant purposefully directed its activities to Illinois. *Id*. Thus, the Supreme Court has held that there was no personal jurisdiction over a foreign defendant who utilized a United States distributor to sell goods in the

United States but did not target the forum state. *Id.* at 2788 (holding that "[t]he defendant's transmission of goods permits the exercise of jurisdiction only where the defendant can be said to have targeted the forum; as a general rule, it is not enough that the defendant might have predicted that its goods will reach the forum State.").

To determine if a defendant's conduct meets this standard, a courts must conduct an individualized assessment. *Id.* at 2790. In *Nicastro*, a distributor agreed to sell the defendant's metal shearing machine in the United States, employees of the defendant attended trade shows in several States but not in the forum state, and "up to four machines ended up in [the forum state]." *Id.* at 2790. The Court found that this was insufficient to establish personal jurisdiction because the defendant did not advertise in the forum state and its only connection with the forum state was the four machines that ended up there. *Id.* As the Court explained, "[t]hese facts may reveal an intent to serve the U.S. market, but they do not show that [the defendant] purposefully availed itself of the [forum state's] market." *Id.*

The company defendants argue that their decision to use a distributor to disseminate their mobile devices is analogous to the distribution arrangement in *Nicastro* and thus insulates them from suit in Illinois. The court disagrees. It is true that *Nicastro* "dispels the notion that merely placing goods into the stream of commerce always indicates purposeful availment." *Original Creations, Inc. v. Ready Am., Inc.*, 836 F. Supp. 2d 711, 717 (N.D. Ill. 2011). Nevertheless, *Nicastro* does not stand for the proposition that if a defendant places goods into the stream of commerce via a third-party distributor who causes those goods to be sold in Illinois, it can never be subject to personal jurisdiction in Illinois.

For example, in *Original Creations*, the defendant sold its products to two distributors who marketed to Illinois residents, the defendant's products were sold at brick-and-mortar stores in Illinois, the plaintiff submitted evidence showing that the defendant's products were offered for sale at three Illinois stores, and the defendant's distribution channels indicated that it "'knew the likely destination' of its products and established 'connections with the forum state.'" *Id.* (citing *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1566 (Fed. Cir. 1994)). The defendants argued that pursuant to the stream of commerce doctrine discussed in *Nicastro*, they were not subject to suit in Illinois. The district court, however, found that "[t]he distribution network [the defendant] has utilized within Illinois is far afield from Justice Kennedy's example [in *Nicastro*] of the owner of the small farm who has no control over distribution channels for her crops." *Id.*

So, is this case closer to *Nicastro* or *Original Creations*? The record provided by Appjigger, who bears the burden of proof and did not seek leave to pursue limited jurisdictional discovery, is scant. The theory advanced by Appjigger is that the company defendants, as well as Ohev-Zion, must have known that BLU Products phones would be offered for sale in Illinois. Its reasoning seems to be that the defendants chose to use a distributor and BLU Product phones ended up in Illinois so the defendants are subject to personal jurisdiction in Illinois because any other result would allow them to "escape responsibility for their actions anywhere but in Florida." (Pl's Sur-Reply at 2, Dkt. 40.) Appjigger also postulates, without any supporting evidence, that the defendants (presumably, Ohev-Zion acting individually and on behalf of the

company defendants) cannot credibly deny knowledge of sales in Illinois, just as Captain Reynault's denial of knowledge of gambling in Rick's Café was not credible.[5]

The problem with this argument is that, as discussed above, the Supreme Court has held merely placing goods into the stream of commerce without any conduct purposefully directed at the forum state fails to establish that personal jurisdiction is proper. *Nicastro*, 131 S.Ct. at 2790. Thus, the fact that goods end up in the forum state, without more, is insufficient to carry the plaintiff's burden of proof regarding personal jurisdiction. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297-98 (1980) (holding that "the forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce *with the expectation* that they will be purchased by consumers in the forum state.") (emphasis added).

The record does not show that the defendants knew that Micro Center stores in Illinois carried BLU Products phones or that they intended phones to be sold there. Micro Center has stores in sixteen states. Without evidence that the defendants knew that BLU Products phones would be offered for sale in *all* Micro Center stores and thus would be sold in Illinois or that phones would be offered for sale in Illinois, it is just as likely that phones would be offered for sale in states other than Illinois.

---

[5] Since Appjigger's support for its argument about the defendants' knowledge is based on a reference to *Casablanca*, the court will provide the full quotation: "Rick: 'How can you close me up? On what grounds?' Captain Renault: 'I'm shocked, shocked to find that gambling is going on in here!' [a croupier hands Renault a pile of money]. Croupier: 'Your winnings, sir.' Captain Renault: [sotto voce] 'Oh, thank you very much.' [aloud] 'Everybody out at once!'" http://www.imdb.com/title/tt0034583/quotes.

The same is true for Best Buy. The court is not required to abandon its common sense when ruling on a motion to dismiss. There are numerous Best Buy stores throughout the United States, in numbers that far outpace the number of Micro Center stores. http://www.bestbuy.com/. While BLU Products' site as of March 2015 stated that two series of its phones were exclusively available in Best Buy stores, Appjigger has not pointed to any evidence showing that these phones (the Studio G and Studio X series) were offered for sale at Illinois Best Buy locations. The court declines to speculate that they were and to speculate further that the defendants were aware that BLU Products phones were available in Illinois Best Buy stores or that the phones were sold in all Best Buy stores, so that they necessarily would have been available in Illinois.

In sum, Appjigger's claim that the presence of actual BLU Products phones in Micro Center stores in Illinois and the presence of hypothetical BLU Products phones in Best Buy stores in Illinois, without more, is insufficient to show that this court may exercise personal jurisdiction over the defendants.

### 3. Internet Sales: Amazon.com

Next, the court turns to the BLU Products' phones offered for sale from an Amazon.com on-line storefront. Appjigger contends that Illinois visitors to the BLU Products or CT Miami site can navigate through those sites directly to BLU Products' Amazon.com store and purchase BLU Products phones. The defendants characterize the BLU Products and CT Miami sites as passive and deny that they are involved in sales made through Amazon.com.

As noted above, the court must resolve any factual disputes in Appjigger's favor. *Greving*, 743 F.3d at 491. The screenshot of the BLU Products' Amazon.com storefront provided by Appjigger (Dkt. 28-2, Ex. E) identifies that storefront as the BLU Products store.

The Amazon.com storefront offers a selection of BLU Products phones and has a link allowing shoppers to follow what appears to be BLU Products' official Twitter feed. For purposes of the motion to dismiss, the court thus accepts that the Amazon.com storefront is associated with BLU Products and is not, as the defendants suggest, a random third-party retailer that sells BLU Product phones but is completely independent of the defendants.

Ultimately, however, this does not help Appjigger. Appjigger's argument about the Amazon.com on-line storefront consists of its contention that the existence of the storefront, by itself, shows that personal jurisdiction over the defendants is proper in Illinois. Although the court invited Appjigger to file a sur-reply, none of Appjigger's filings cite to authority regarding Internet sales and personal jurisdiction. The court declines to craft arguments for Appjigger.

Suffice it to say that "in cases in which the defendant's alleged contacts with the forum state occurred online, the Seventh Circuit has noted that the relevant inquiry typically 'boils down' to whether the defendant has purposely exploited or in some way targeted the forum state's market." *Telemedicine Solutions LLC v. WoundRight Tech., LLC*, 27 F. Supp. 3d 883, 891-92 (N.D. Ill. Mar. 14, 2014) (quoting *be2 LLC v. Ivanov*, 642 F.3d 555, 558-9 (7th Cir. 2011)). Thus, "[i]f the defendant merely operates a website, even a 'highly interactive' website, that is accessible from, but does not target, the forum state, then the defendant may not be haled into court in that state without offending the Constitution." *be2 LLC*, 642 F.3d at 559 (7th Cir. 2011); *see also Illinois v. Hemi Grp., LLC*, 622 F.3d 754, 760 (7th Cir. 2010) ("Courts should be careful in resolving questions of personal jurisdiction involving online contacts to ensure that a defendant is not haled into court simply because the defendant owns or operates a website that is accessible in the forum state, even if that site is 'interactive.'").

Appjigger has not presented any argument or authority that refutes the general rule that specific personal jurisdiction cannot rest on a website that has no discernable link to Illinois, other than the fact that Illinois residents can access that website. *See Telemedicine Solutions LLC, LLC*, 27 F. Supp. 3d at 897-98. The existence of BLU Products' Amazon.com storefront is, therefore, insufficient to establish personal jurisdiction over the defendants.

**B.     The Defendants' Motion to Transfer Pursuant to 28 U.S.C. § 1404(a)**

The defendants include a fallback in their motion to dismiss by asking the court to transfer this action to the Southern District of Florida pursuant to 28 U.S.C. § 1404(a) if jurisdiction and venue are proper in this district. Appjigger does not include a fallback in its opposition to the motion to dismiss, such as its own request to transfer this action in the event that the court agrees that personal jurisdiction over the defendants is improper in this district: it merely opposes the defendants' motion to dismiss or transfer in its entirety.

Section 1404(a) is, therefore, the only basis for transfer before the court. This section "allow[s] a district court to transfer an action filed in a proper, though not necessarily convenient, venue to a more convenient district." *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 977 (7th Cir. 2010); *Roberts & Schaefer Co. v. Clyde Bergemann Delta Ducon, Inc.*, No. 14 C 8841, 2015 WL 1911108, at *4 (N.D. Ill. Apr. 27, 2015) (transfer is appropriate under § 1404(a) if, among other things, "venue is proper in both the transferor and transferee court") (quoting *Law Bulletin Publ'g, Co. v. LRP Publ'ns, Inc.*, 992 F. Supp. 1014, 1017 (N.D. Ill.1998)). The court has already found that it cannot exercise personal jurisdiction

over the defendants in this district. The parties agree that if personal jurisdiction is not proper in this district, venue is also improper. Thus, the court may not transfer this action based on § 1404(a).

"The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). Appjigger did not move for transfer, in the alternative, pursuant to § 1406(a). It may do so within one week of the date of this order. If no motion is filed, the court will close this case.

### III. CONCLUSION

The defendants' motion to dismiss for lack of personal jurisdiction and improper venue or, alternatively to transfer this action to the United States District Court for the Southern District of Florida [18] is granted in part and denied in part. Specifically, the motion to dismiss for lack of personal jurisdiction is granted and the remainder of the motion is denied. The dismissal is without prejudice to refiling in the Southern District of Florida, although this court cannot and does not make any findings as to propriety of any such suit. The clerk is directed to leave this case open. Appjigger may file a motion to transfer pursuant to 28 U.S.C. § 1406(a) within one week of the date of this order. If no motion is filed, the court will close this case.

Date: May 29, 2015 /s/
Joan B. Gottschall
United States District Judge